JUSTICE RICE,
concurring.
¶26 I concur with the results reached by the Court and write separately to offer additional observations. This important case addresses water law issues for which we have no prior precedent.
¶27 Under Issue 1, Teton Prairie argues that Appellees were required to make their August 22, 2013 call “in reverse priority to every water right holder,” rather than limiting the call to particular junior appropriators it had observed using water. Teton Prairie labels Appellees’ action a “selective call” that shifts the enforcement burden from senior appropriators to junior appropriators to enforce their relative seniority over other junior appropriators, and that altogether relieves those junior appropriators who were not observed using water from curtailing their use. Teton Prairie calls this a “trickle down enforcement effect” that conflicts with orderly administration of the *182 Prior Appropriation Doctrine and that fails to consider the relative priority of junior claims. It quotes a brief statement in an August 30, 2011, memorandum from the Montana Water Policy Interim Committee that “[t]he senior will call each user in the order of the most junior to the most senior until the right is satisfied.”
¶28 As logically appealing as this argument initially sounds, I find it significant that Teton Prairie cited to no case precedent supporting the proposition that calls must be made rigidly in the order of priority, from most junior to most senior, and my search likewise revealed no such authority. As the District Court reasoned:
There is no authority for Teton Prairie’s contention that a junior water rights holder may simply not comply with a senior water rights holder’s call for water because every other junior rights holder has not been called. It is possible that best practices would lead to the senior water rights holder calling all junior water rights holders, including groundwater rights holders, but to impose the absolute obligation that these calls must be made before any call is “valid,” is against the spirit of the prior appropriation doctrine. Any mistake being made by a senior rights holder making a call for water being reason enough for a junior rights holder to ignore the call would unnecessarily restrict the rights of senior water rights holders.
Presumably under Teton Prairie’s interpretation, any junior water rights holder could continue diverting water until they are satisfied that all other junior rights holders have been called, which could mean days or weeks of senior rights holders not having their rights met. In the instant case, the Plaintiffs made calls for water on every junior water rights holder that they observed using water from the Teton River and only Teton Prairie did not comply.
Given the lack of contrary authority, I believe the practicalities cited here by the District Court demonstrate that the Prior Appropriation Doctrine is best applied by requiring Appellees’ call to Teton Prairie to be honored. Perhaps the future development of technology will make it possible for calls to be efficiently and immediately communicated to junior appropriators in the exact order of priority, or a Water Commissioner will be appointed to provide on-the-ground management of the issue, but, based on the manner in which the system currently operates, I agree with the Court that the District Court correctly decided the issue.
¶29 The other argument made by Teton Prairie under Issue 1 is that the Appellees made an improper “pre-emptive call” because, at the *183 time of their August 22, 2013 call, it is undisputed that Appellees “had water flowing past their respective diversion points in excess of the amounts adjudicated at the time the call was made.” Citing the principle that “a prior right may be exercised only to the extent of the necessities of the owner of such prior right and when devoted to a beneficial purpose within the limits of the right[,]” Cook v. Hudson, 110 Mont. 263, 282-83, 103 P.2d 137, 146 (1940), Teton Prairie contends that Appellees were limited to the water necessary for their beneficial use, and that the District Court, by approving a call made before Appellees’ water fell below their allotted rights, permitted Appellees to “exceed their adjudicated water rights.” Teton Prairie contends that Appellees can now make calls “with no parameters or limits” and that they have the right to subjectively “call whenever they believe water may become deficient at some point in the future,” even an “unquantified” and unlimited amount of water.
¶30 Teton Prairie supports its assertion that Appellees had enough water at the time of their call by use of a formula for calculating the flowrate necessary to satisfy an animal unit, referencing a DNRC guideline, up to the maximum number of livestock to be serviced, as adjudicated by the Water Court for Appellees’ stockwater rights. Appellees respond that their stockwater rights were not adjudicated with flowrates by the Water Court, and that Teton Prairie’s use of this formula constitutes a collateral attack on their water rights. Teton Prairie replies that such calculations have been previously used to quantify the flowrate of stockwater rights, citing a Water Master’s Report.
¶31 As Teton Prairie notes, the Water Court has stated that a flowrate measurement for a stockwater right “may be difficult to make.” In re Jefferson River Basin, Mont. Water Co., 1993 Mont. Water LEXIS 7 (Sept. 21, 1993). While I do not categorically reject efforts to quantify a stockwater right flowrate, as such calculations could be useful in the right context, I find it unnecessary to resort to such a calculation to resolve the issue presented here.
¶32 In its ruling, the District Court accepted that Teton Prairie was factually correct about the status of water available to Appellees when they issued the August 22, 2013 call. However, it determined that Teton Prairie’s objection to the call was practically “untenable” because the Teton River was rapidly dropping near the Appellees’ properties at the Loma gauge, and expert testimony had agreed it would take days, perhaps 5 to 10, for water at Teton Prairie’s diversion to reach Appellees’ property. The court concluded that Appellees’ need for more water was “clearly obvious” and that they were not obligated “to wait *184 until the river goes dry,” and their rights to become unsatisfied, before making a call. Similarly, Appellees argue on appeal that, based on their “significant historical experience” with this river system and the “dynamic nature of river systems” generally, “it was reasonable for Appellees to make calls for water when trends in the flows indicated that the river soon would be dry[.]”
¶33 The parties’ properties on this system are some 200 river miles apart. Even the expert witnesses could not state with exactness the timing and the impact of Teton Prairie’s cessation of water use upon Appellees’ properties. The current nature of this science is inexact. However, Appellees’ call was made with reasonable knowledge that the loss of sufficient water to sustain their rights was imminent, or in the words of the District Court, was “clearly obvious.” At such a point, I believe senior appropriative rights may be enforced by making the call. It is important to remember that the burden rests on a senior appropriator to make his needs known, or junior appropriators cannot be faulted when the senior runs dry. See Cook, 110 Mont. at 283, 103 P.2d at 146 (“When the one holding the prior right does not need the water, such prior right is temporarily suspended and the next right or rights in the order of priority may use the water until such time as the prior appropriator’s needs justify his demanding that the junior appropriator or appropriators give way to his superior claim.”) (emphasis added).
¶34 Another reason such a rule is necessary is that requiring the river to run dry at a senior appropriator’s place of use would feed a junior appropriator’s futile call defense. Once carrier water is depleted and the bed is dry, a larger amount of water is needed to satisfy a downstream right, increasing the chances a junior appropriator could sustain a futile call claim. See Irion, 110 Mont. at 581-82, 105 P.2d at 673. Senior appropriators should not be forced to delay a call and thereby increase the risk of that they will lose a futile call claim.
¶35 These reasons also undermine Teton Prairie’s argument that material factual conflicts prevented summary judgment on its futile call claim. Assuming Deep Creek was dry in places, there was also evidence that water was flowing in some places through Deep Creek. The strength of the expert testimony, as noted by the Court, that additional water could have flowed to Appellees’ properties on the Teton River upon Teton Prairie’s cessation, even if the exact timing was in question, demonstrates that Teton Prairie had not satisfied its burden under Irion. Opinion, ¶ 20.
¶36 I concur.